**WOODS v. CAMMETT et al.**

**Civ. No. 742.**

United States District Court D. New Hampshire.

Oct. 19, 1948.

[1] In 1948 Revision, 28 U.S.C.A. §§ 2671, 2401, 2678–2680.

Roy M. Fitzmorris, Chief, Rent Litigation Section, Regional Office, Office of the Housing Expediter and Vincent L. Scanlon, Rent Litigation Atty., both of Boston, Mass., for plaintiff.

John H. Sanders and William D. Tribble, both of Concord, N. H., for defendants.

CONNOR, District Judge.

This is an action brought under Section 206(b) of the Housing and Rent Act of 1947, as amended, P.L. 464, 80th Congress, 2d Session, 50 U.S.C.A.Appendix, § 1896 (b), wherein the petitioner seeks to enjoin the respondents from alleged violations of Section 209(a) of the Act of 1947, as amended, 50 U.S.C.A.Appendix, § 1899(a). The pertinent section is more accurately described as Section 209(a) (5), the language of which is as follows: "(5) The landlord seeks in good faith to recover possession of such housing accommodations for the immediate purpose of withdrawing such housing accommodations from the rental market, and such housing accommodations shall not thereafter be offered for rent as such;" this being the exemptive clause under Section 209(a), which section prohibits the recovery of possession of any controlled housing accommodations subject to the exceptions therein outlined. The facts are not in dispute and may be stated as follows: The premises are located at 43½ Winter Street, in the town of Exeter, within this district, being of the single dwelling type, and are housing accommodations in the Portsmouth Defense-Rental Area. The property had been acquired by the defendants for investment purposes, and shortly thereafter, on July 6, 1948, they caused to be served upon the tenant in occupancy a notice that they sought to recover possession of said premises "for the immediate purpose of withdrawing such housing accommodations from the rental market." On or about September 18, 1948, the defendants further cause to be served upon the said tenant a writ of ejectment returnable in the Municipal Court of Exeter, on September 27, 1948, the basis of such action being set forth in the notice, to wit: That the defendants allegedly intend to withdraw said housing accommodations from the rental market. At the said ejectment proceeding in said municipal court on September 27, 1948, the court issued an order directing the tenant to vacate the premises on or about October 4, 1948. Soon after the notice to quit had been served upon the tenant, the property was listed for sale by

the defendants with a local realtor, and on July 19, 1948, an agreement for sale was entered into with one Dube, who is under order to vacate the premises he now occupies, and desired these accommodations for his immediate and personal use and occupancy. He, as a veteran, has entered into negotiations for a G. I. loan with a local bank which requires that the premises be vacant before the loan can issue. There is no evidence that any arrangement had been entered into between the defendants and Dube when the notice was served, neither is it questioned that the defendants' purpose in evicting the present tenant is to sell the property. The present action seeking a temporary and permanent injunction enjoining the defendants from evicting the said tenant and from violating any of the provisions of the Act was filed in this court September 30, 1948.

Upon first reading of the pertinent clause and considered without reference to other subsections, it might be inferred that it could be resorted to by a landlord situated as are the defendants, but when considered with other subsections, especially Section 209(a) (3), a different interpretation and purpose appears. In determining the meaning, extent, and purpose of the statute, the legislative history must be studied. The 1947 Act was subjected to many important amendments enacted by the 80th Congress. The prohibition and enforcement section, 206(a) and (b), was amended to permit the issuance of injunctive orders if a violation of any provision of Title II of the Act is established. Section 209(a) (5) of the Act was repealed, and an entire new Section 5, the subject matter of which is wholly different, was substituted. Apparently it was the intent of Congress to enact legislation thought necessary to cover the situation indicated, no applicable proviso being then in force. With Section 209(a) (3) left undisturbed, it is plain that the field covered by the new enactment is of a different category, designed to care for situations to which the language of the section refers. By leaving Section 209(a) (3) in its original text, the reasonable inference would be that Congress concluded that sufficient means were provided for eviction of tenants upon contract to sell the accommodations.

In passing upon the applicability and use of the disputed section, it is of paramount concern that the objectives and purposes of the Act be considered. The Act was designed to facilitate to the utmost the full and constant use of all available housing accommodations. The withdrawing of these accommodations from the rental market, when such withdrawal is not of a permanent character within the meaning and intent of Section 209(a) (5), but for the purpose of sale, defeats in some measure the aim of rent-control legislation. Under this procedure the property is held vacant for a time uncertain, dependent upon the condition of the real estate market and the consummation of an agreement satisfactory to the buyer and seller, likely producing speculation in vacant housing accommodations. Other reasons come to mind which negate the use of Subsection 5 in the present circumstances. Certain conditions must be met under Section 209(a) (3) before a sale can be made, but there is no such requirement under Section 209(a) (5). Obviously few landlords would resort to Subsection 3 with the conditions there imposed in order to sell, when they could obtain the same results of sale under Subsection 5, free from the conditions present in Subsection 3. Similarly it is plain that a better price would be realized from vacant property as compared with that which is occupied. The evidence fully demonstrates that the situation in which the owners find themselves is squarely within the provisions of Section 209 (a) (3) under which they could have properly proceeded and may still.

The conclusion is inescapable that the pertinent section excludes the idea of sale and contemplates the retention of ownership in the landlord, and is to be invoked only when the circumstances and intent are in harmony with the conditions therein prescribed. Under the terms thereof the accommodations are not to be thereafter offered for rental, and this prohibition is directed to the housing accommodation itself, not lessened nor impaired

by change of ownership. I am unable to find any purpose for the enactment of this section other than what the language thereof clearly implies, nor can I find that the section is to be considered as a supplemental or alternate mode for eviction when a sale is to be made as defined in Section 209(a) (3).

No appellate review involving this issue has come to my attention, nor has the question been passed upon in our district courts except in a few cases. Woods v. Palumbo, D.C.M.D.Pa.1948, 79 F.Supp. 998, and Woods v. Taper, D.C.S.D.Cal., 79 F.Supp. 984. The facts therein are similar to those in the instant case, and with the results there reached I agree and am of the opinion that a like order is here indicated.

It is clear that the admitted purpose for which the eviction proceedings were instituted does not constitute a proper ground for eviction within the meaning of Section 209(a) (5) of the Act, and the defendants, having engaged in an act which is in violation of Section 206(b) thereof, must be enjoined from proceeding with the process chosen, and a permanent injunction in compliance herewith will issue.

Plaintiff is directed to forthwith submit a draft of final judgment containing such order.